UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**STEVEN P. LITTLEFIELD,**

               Plaintiff,                        Case No. 3:12-cv-01464-ST

        v.                                   **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

               Defendant.

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Steven P. Littlefield ("Littlefield"), seeks judicial review of a final decision by the Commissioner of the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 USC §§ 401–33. This Court has jurisdiction pursuant to 42 USC § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case remanded for further proceedings to establish an onset date and award benefits.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Littlefield protectively filed for DIB and SSI on February 23, 2009, alleging a disability onset date of November 25, 2006. Tr. 79-80, 167-176.[1] After his applications were denied both initially and on reconsideration, Littlefield requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 107-114. On November 23, 2010, ALJ Steve Lynch held a hearing at which Littlefield testified, as did his parents and a Vocational Expert ("VE"). Tr. 37-62. On December 6, 2010, the ALJ issued a decision finding Littlefield not disabled within the meaning of the Act. Tr. 15-28. On June 14, 2012, the Appeals Council denied Littlefield's request for review, making ALJ Lynch's decision the final decision of the Commissioner. Tr. 1-4; 20 CFR §§ 404.981, 416.1481.

## BACKGROUND

Littlefield was 34 years old at the time of his alleged onset date and 38 years old at the time of the hearing. He is a high school graduate and completed two years of college. Tr. 287, 436. He has past relevant work as a shipping and receiving clerk, forklift operator, and sales manager. Tr. 58. Littlefield alleges that he became unable to work on November 25, 2006, due to depression, anxiety, panic attacks, and physical restrictions due to hepatitis and an enlarged gall bladder. Tr. 192.

## DISABILITY ANALYSIS

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

---

[1] Citations are to the page(s) indicated in the official transcript of record filed on March 11, 2013 (docket #11).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12–month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). Absent a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 CFR Pt. 404, Subpt P, App 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96–8p, *available at* 1996 WL 374184.

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work ("PRW"). 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform PRW, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC.  *Id.*  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1566, 416.966.

## ALJ'S FINDINGS

At step one, the ALJ found that Littlefield has not engaged in any substantial gainful activity since the alleged onset date of disability.  Tr. 20.  At step two, the ALJ determined that Littlefield suffers from the severe impairments of hepatitis-C, anxiety, dysthymia, and polysubstance abuse in remission.  *Id*.  At step three, the ALJ found that Littlefield's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment.  Tr. 24.

Because Littlefield did not establish disability at step three, the ALJ continued to evaluate how his impairments affected his ability to work.  The ALJ concluded that Littlefield had the RFC to "perform less than the full range of light work," is able to "lift and carry 10 pounds frequently and 20 pounds occasionally," can "sit, stand and walk for up to 6-hours in each activity (cumulatively, not continuously) in an 8-hour workday with normal breaks," but is unable to work "around hazards such as working at unprotected heights or around machinery with exposed moving parts," and is restricted to simple, entry-level work and tasks requiring no teamwork, with no interaction with the general public and only casual and occasional interaction with co-workers.  *Id*.

At step four, the ALJ found that Littlefield was unable to perform his past relevant work as a warehouse worker.  Tr. 26-27.  However, at step five, the ALJ found that Littlefield was not

disabled because he could perform other jobs as a small products assembler, electronics worker, and hand packaging/heat sealing worker.  Tr. 27-28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  The court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Lingenfelter*, 504 F3d at 1035; *Batson*, 359 F3d at 1193.

## DISCUSSION

Littlefield argues that the ALJ erred by:  (1) improperly discounting the opinion of his treating psychologist, William Mullins, Ph.D. and (2) improperly rejecting the testimony of his parents.  For the reasons that follow, this court concludes that the ALJ erred by discrediting Dr. Mullins' opinions and that, when those opinions are properly credited, a finding of disability is mandated.  As further discussed below, however, further proceedings are necessary to establish a disability onset date.

///

///

I.    **Factual and Medical Background**

During high school, Littlefield began using alcohol and drugs.  Tr. 395, 610.  He later reported that he was largely a social drinker to help reduce his anxiety.  Tr. 436.  Eventually, his drug use escalated into the abuse of marijuana, LSD, methamphetamine, cocaine, and intravenous heroin.  Tr. 436, 610, 700.  Despite this history, Littlefield remained gainfully employed throughout the 1990's and into 2000 and 2001, with his earnings significantly decreasing between 2002 and 2004.  Tr. 178-79, 230.

On March 13, 2003, Littlefield established care with Timothy Janzen, M.D., at South Tabor Family Physicians, LLP.  Tr. 477.  Littlefield described having anxiety for which he was taking Klonopin and reported suffering panic attacks 2-3 times per week which caused him to feel very anxious, have shortness of breath, tingling chest pains, and a feeling of impending doom.  *Id*.  He remained on methadone, as well as promethazine to help with the nausea brought on by the methadone.  *Id.*  He was working part-time and looking for full-time employment.  *Id*.

In November 2003, he was diagnosed with Hepatitis C, opioid dependence, cocaine dependence (in remission), nicotine dependence, and depression (currently in remission with Remeron).  Tr. 369.  He had just completed residential treatment for opioid and cocaine dependence.  *Id*.  His Hepatitis C was asymptomatic at that time, and his then-treating doctor did a complete lab workup and had a lengthy discussion with him concerning evaluation, prognosis, and potential for treatment of Hepatitis C.  *Id*.

Early in 2004, at a follow-up appointment, his treating doctor indicated that he would recommend a hepatology evaluation for his Hepatitis C once he maintained a six-month clean and sober period.  Tr. 368.

Littlefield apparently filed prior applications for DIB and SSI benefits some time in or before 2004, which resulted in a hearing before an ALJ in December 2004 (Tr. 363) and a denial of benefits on May 16, 2008.  Tr. 69-78.

In November 2004, Littlefield started counseling and a methadone maintenance treatment program with Allied Health Services, which he reported "saved his life" by getting him away from heroin and cocaine addictions.  Tr. 316, 385, 391-92.  He began working again in January 2005 at a job that lasted about six months.  Tr. 230.  Littlefield apparently started the methadone treatment against the orders of the parole officer who was supervising him due to a prior DUII conviction.  Tr. 385.  However, about a year later, he was arrested and did jail time for absconding from his parole officer.  *Id*.

The record is largely silent for the remainder of 2004 and 2005.  Between March 2005 and 2008, Littlefield received medical treatment and therapy through Kaiser Permanente. Tr. 372-90.

Littlefield worked again between January and September 2006 as a warehouseman in shipping and receiving and inventory control.  Tr. 230, 297-99.  In September 2006, Littlefield was arrested on a bench warrant related to a DUII charge.  Tr. 390.  Shortly thereafter, he lost that job when his work duties conflicted with his treatment regimen.  Tr. 395, 436.  He continued looking for work that would not interfere with his appointments at the methadone clinic and for therapy.  Tr. 387.  In August 2007, as part of a diversion program following a second DUII conviction, Littlefield began treatment with Cascadia Behavioral Healthcare.  Tr. 625.

Apparently in connection with his initial benefits applications filed in 2003 or 2004 (Tr. 363), Littlefield underwent a comprehensive psychodiagnostic evaluation on April 30, 2008,

by Richard Kolbell, Ph.D.  Tr. 435-39.  Dr. Kolbell made an Axis I diagnosis of "Generalized

Anxiety Disorder with Prominent Panic, Agoraphobia, and Obsessive-Compulsive Features, rule

out Obsessive-Compulsive Disorder, Dysthymia, History of Polysubstance Abuse and

Dependence, Currently in Sustained Remission" and assessed Littlefield's Global Assessment of

Functioning ("GAF") at 45. [2]  Tr. 438.  Dr. Kolbell found Littlefield "significantly limited by

prominent anxiety" and "particularly debilitating obsessive thinking," and noted that psychiatric

care would be essential to helping Littlefield achieve a point where he is capable of sustained

attention and persistence in a competitive workplace environment."  *Id.*

        Shortly after this evaluation, Littlefield's parents arranged for him to move to their

apartment complex in order to better assist him.  Tr. 296, 438.  He continued treating with

Dr. Janzen, attending an anxiety group meeting, Narcotics Anonymous, and other group sessions

weekly, trying to taper off the methadone, working part-time, and maintaining sobriety.  Tr. 476.

Dr. Janzen referred him to William Schlippert, M.D., for evaluation of recurring abdominal

symptoms and to Dr. Mullins for psychotherapy regarding his anxiety disorder.  Tr. 475-76.

        In late August 2008, Littlefield began treatment with Dr. Mullins.  At his initial

evaluation, Littlefield reported lifelong anxiety, including as a child.  Tr. 615.  Dr. Mullins

assessed his GAF at 50 and made an Axis I diagnosis of "Panic [with] Agoraphobia" and

depression.  Tr. 617.  Littlefield reported past medications of Paxil, Celexa, Zoloft, and

Wellbutrin to treat his depression.  Tr. 615.

---

[2]  The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to
different aspects of the disorder or disability. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental
Disorders* 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR").  Axis V is the Global Assessment of Functioning (the "GAF"),
which reports the clinician's judgment of the individual's overall functioning.  *Id* at 32-33.  A GAF score of 41-50 indicates that
the patient has "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious
impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  *Id* at 34.

A little over a month later, Littlefield reported that his depression felt much better, was walking 1.5 miles daily, had lost 13 pounds, and felt his follow-up was getting better.  Tr. 614. He was attending weekly meetings with Narcotics Anonymous, a methadone support group, an and an anxiety group session at Kaiser Permanente, searching for a job, and having his medications managed by Dr. Janzen.  Tr. 471-75, 614.

In November 2008, Littlefield reported feeling depressed and anxious, although his sleep had improved and he was taking college placement classes.  Tr. 612.  He was awaiting the results of a liver biopsy, continuing to attend group sessions for his anxiety and narcotics addiction, and maintaining sobriety.  *Id.*  By December 1, 2008, Littlefield was feeling more energetic, spending more time with family and friends, seeing Dr. Mullins regularly, and contemplating tapering off of methadone and seeking treatment for his Hepatitis C.  Tr. 470, 610.  He saw Dr. Mullins again on January 5, 2009 (Tr. 608), and Dr. Janzen a week later.  Tr. 469.  He anticipated starting treatment for his Hepatitis C in February 2009, reported no new problems and a relatively stable mood, and visited his parents 2-3 times per week.  Tr. 469, 608.

Two weeks later on January 26, 2009, Littlefield reported being "moody," short and irritable with his parents.  Tr. 606.  He planned to appeal the denial of his applications for benefits (which had occurred May 16, 2008 (Tr. 69-78)), was walking three miles per day, starting interferon treatment the following week, and planning to taper off of methadone after the interferon treatment.  Tr. 606.

Littlefield's first interferon treatment on February 6, 2009, was "rough" and caused side effects, including headaches, fatigue, and myalgias, usually for a couple of days afterward. Tr. 468, 605.  He was still taking methadone, but hated the "extreme drug culture" around the

methadone clinic where he had to wait around for about three hours. Tr. 605. He was suffering mild depression, but visiting his mom daily and seeing his teenage son on weekends. *Id*.

By April 2009, Littlefield's affect was improved and he was lowering his methadone dosage "on his own." Tr. 603. He reported depression at 3-4 on a scale of 1-10, with 10 being the "worst ever." *Id*. He was continuing various group sessions, spending more time and becoming more connected with his dad, and starting a job search. *Id*. However, a few weeks later, he reported constant exhaustion from the Hepatitis C, to the point that his mom told Dr. Mullins that she viewed him as "too beat to hold a job." Tr. 602.

On June 1, 2009, Littlefield reported to Dr. Mullins that he was considering switching from methadone to suboxone, a semi-synthetic opioid used to treat opioid addiction. Tr. 601. He reported working with Dr. Janzen to detox off methadone and rated his depression as about 4 on a 1-10 scale. Tr. 600. He experienced some abdominal pain after eating which had worsened over the past four or five months. Tr. 549. In late July 2009, Littlefield was seen at the emergency room for abdominal pain and associated symptoms. Tr. 541-42, 599. Later follow-up was suspicious for irritable bowel syndrome. Tr. 554-55. Littlefield had reduced his visits to the methadone clinic because it "really depresse[d]" him. Tr. 599.

By September 2009, Littlefield was less depressed, secondary to finding out that his Hepatitis C was in complete remission. Tr. 598. He was applying for jobs, had resumed regularly exercising on a treadmill, and was going to the methadone clinic three days a week. *Id.*

In a Mental Status Report dated September 15, 2009, Dr. Mullins indicated that he had seen Littlefield monthly since August 2008, who was always on time to appointments and accompanied by his mother due to his suspended driver's license. Tr. 556. Littlefield had scored

26 (indicating moderate depression) on the Beck Depression Inventory ("BDI"). *Id.*
Dr. Mullins's diagnostic impressions included heroin dependence (in remission while on methadone), recurrent severe depression, panic with agoraphobia, Hepatitis C, hypotension, and irritable bowel syndrome. Tr. 557. He also noted that Littlefield's "social anxiety makes most public interactions nearly impossible for him." *Id.* Dr. Mullins opined that "work related concentration and persistence would be extremely difficult" for Littlefield and that his "social introvention, loss of self-confidence, poor education and repeated loss of jobs have caused severe work skill deterioration." Tr. 558.

In late September 2009, Littlefield reported feeling more irritable and lashing out more. Tr. 597. He was still taking methadone, had interviewed for a warehouse job the previous week, and was exercising daily on a treadmill. *Id.* He reported increasing depression in late October, had reduced his methadone dosage, was experiencing hot and cold and pins and needles, and feeling more depressed secondary to "not being there" for his son. Tr. 596.

In November 2009, Littlefield reported being really depressed and "shutting down." Tr. 595. Although he had received a financial aid grant, he did not have the confidence to start at community college and planned to wait until winter term. *Id.* By the end of 2009, he had enrolled at Mt. Hood Community College ("MHCC"), felt like he was doing better, was happy to be enrolled, and planning to start college classes in January. Tr. 594.

Littlefield apparently did not see Dr. Mullins between January 11 and May 3, 2010. Tr. 592. He flunked all of his MHCC classes but planned to reenroll for spring term. He had also finished his term of probation and was eligible to have his driver's license reinstated. *Id.*

11 - OPINION AND ORDER

By mid-June 2010, Littlefield reported struggling with coming off of methadone. Tr. 591. He was aware of increased aches and pains and elevated anxiety and had several days of acute depression when he did not shower or get out of bed. *Id*. He was "violently ill" with a bleeding ulcer, but was pleased with the dental work he had undergone. *Id*. He was performing chores for his parents and doing odd jobs for his neighbors and talking daily with a close friend. *Id*. By late July, he was "doing better" and working out with weights and in the pool. Tr. 589. He was gradually tapering off of methadone. *Id*.

By mid-September 2010, Littlefield was apparently off of methadone, felt "like [his] old self" and was "very happy." Tr. 712. He switched from methadone to suboxone in late August and was sleeping very well. *Id*.

The most recent chart note from Dr. Mullins is dated October 12, 2010, six weeks before the November 23, 2010 hearing before the ALJ. Tr. 711. That report indicates that Littlefield was "hyper and anxious all the time" and experiencing nausea-like withdrawals. *Id*. He was still sleeping well at night and working on renewing his driver's license. *Id*. However, he reported that social isolation was "getting to him" and that he was "more paranoid." *Id*.

## II.    <u>Treating Psychologist</u>

Littlefield's primary argument is that the ALJ failed to give proper weight to the opinions of his psychologist, Dr. Mullins, who treated him from August 2008 through the time of the hearing in November 2010.

In order to reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005), citing *Lester v. Chater*, 81 F3d 821, 830-31 (9th Cir 1995). However, if a

treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be

rejected for specific and legitimate reasons. *Id.* The opinion of an examining physician is

entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908

F2d 502, 506 n4 (9th Cir 1990).

The Commissioner argues that the ALJ could properly reject Dr. Mullins's opinions by

providing specific and legitimate reasons because they are contradicted by or inconsistent with

other examining or treating physicians. However, neither the ALJ nor the Commissioner

identifies any specific inconsistency. Instead, as discussed below, the ALJ both misses

significant diagnostic information in the record and draws his own unsupported medical

conclusions from the treatment records. Neither approach affords even a specific and legitimate

basis on which to reject Dr. Mullins's opinions, much less a clear and convincing reason.

Littlefield's reliance on Dr. Mullins's opinions are primarily tied to his two Mental Status

Reports completed on April 2, 2009 (Tr. 493-95), and September 15, 2009 (Tr. 556-58), and a

"fill-in-the-box" form completed at the behest of Littlefield's attorney on October 28, 2010

(Tr. 359-61). In the April 2, 2009 report, Dr. Mullins noted that Littlefield "lives

independently," "goes to daily treatment groups," and had "significantly reduced severity of

depression" and "some reduction in anxiety" since Dr. Mullins first started treating him, but was

"still self-isolating" and had "symptoms of anxiety and depression severe enough to not be able

to stay employed." Tr. 493-94. Although Dr. Mullins had "no knowledge of how [Littlefield]

concentrates in [a] work setting," he "assumed he struggles with focused attention" based on his

anxiety. Tr. 495. In completing the same report five months later, Dr. Mullins listed Littlefield's

symptomology as "anxiety, depression, [and] anhedonia," and found Littlefield self-critical, with

a poor self-image, suffering from extreme social isolation and restlessness, and unable to work. Tr. 556. With regard to work-related functional restrictions, Dr. Mullins opined that "work related concentration and persistence would be extremely difficult" for Littlefield. Tr. 558.

A year later (about a month before the hearing), Dr. Mullins indicated that Littlefield: (1) had poor or no ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms" and "perform at a consistent pace without an unreasonable number and length of rest periods;" and (2) on average, would miss about four days per month due to impairments or treatment. Tr. 360-61. At the hearing, the VE testified that any one of these restrictions would make Littlefield unable to remain competitively employed. Tr. 60-61.

In a lengthy discussion, the ALJ explicitly rejected Dr. Mullins's opinions. He pointed to two contradictions: (1) the symptom of self-isolation contrary to the facts that Littlefield comes to appointments on time and receives daily methadone injections (or wafers) from the methadone clinic; and (2) the diagnosis of generalized anxiety contrary to the notations that Littlefield "lives independently," has good hygiene, is "casual, cooperative, and polite." Tr. 22. The first of these observations may have some merit; the ALJ appears to question the notion that Littlefield cannot make his way to a job site if he demonstrably can make his way to his appointments on time and to the methadone clinic. However, standing alone, that reason is an insufficient basis on which to discredit Dr. Mullins' opinions because it does not address the functional limitations relied on by Dr. Mullins. Thus this court must examine the other reasons given by the ALJ.

The reason given for discounting Littlefield's generalized anxiety diagnosis does not withstand scrutiny. This court can discern no contradiction whatsoever between that diagnosis

and Littlefield's hygiene, clothing choices ("casual"), and mannerisms (cooperative and polite). This leaves only the chart note that he "lives independently." The record reveals that Littlefield lived alone, but certainly did not function "independently." His parents monitored his medications, took him to and from appointments, supported him financially, and eventually moved him into the same apartment complex to more readily assist him. Tr. 51, 296. It is not entirely clear why the ALJ concluded that an anxiety diagnosis is inconsistent with living alone. Moreover, the two mental health providers whose records the ALJ gave "great weight" (Tr. 26) diagnosed the same condition (Tr. 396 (Margot David, LCSW), 438 (Richard Kolbell, Ph.D.)), and Cascadia Behavioral Healthcare provided its services based on the same diagnosis dating back to November 4, 2006, although without indicating the origin of that diagnosis (Tr. 409, 625).

In a lengthy paragraph, the ALJ also gave other reasons for discounting the severity of Littlefield's anxiety disorder. He repeated his observation that Littlefield enjoys "independent functioning," and took "particular note" that Littlefield's "longitudinal chemical dependency treatment history and group therapy at Cascadia from November 2006 through his last attended session in March 2008, only reflects diagnoses of Opioid dependence; cocaine dependence and alcohol abuse." Tr. 23. The difficulty with these observations is that, as discussed above, Littlefield was living alone but enjoying the considerable support of his parents, and Cascadia's records in fact do show a diagnosis of anxiety disorder.

The ALJ also characterizes Dr. Mullins's records as reflective of "mild-to-moderate" symptoms for both anxiety and depression, consistent with the records from Dr. Janzen and Cascadia," and presumably inconsistent with Dr. Mullins' opinions as reflected in the disputed

forms. Tr. 23. The ALJ does not point to any particular record as support for this conclusion. The Cascadia records consist of nothing more than lists of treatment dates and one-line descriptions of the services provided (Tr. 409-15), one record of an appointment "No Show" (Tr. 623), and a Termination Summary. Tr. 624-26. Cascadia's treatment services clearly were directed at providing a mechanism for him to complete DUII diversion, examine the impact of substance use in his life, learn strategies to prevent relapse, and establish and maintain sobriety. Tr. 625. Thus, apart from being completely unilluminating on the effects of Littlefield's anxiety disorder, Cascadia's records reveal that its services were directed at encouraging substance abuse prevention, not at identifying and ameliorating the symptoms of his medical and mental impairments. They provide no basis for discounting Dr. Mullins's opinions.

Dr. Janzen began treating Littlefield in mid-March 2008 and eventually referred him to Dr. Mullins. Most of Dr. Janzen's chart notes indicate diagnoses of anxiety disorder or panic disorder, consistent with those of Dr. Mullins. Some do note waxing and waning symptoms of anxiety or panic disorder, but the bulk are focused on treatment of Littlefield's opioid addiction, Hepatitis C, abdominal complaints, and insomnia. The isolated and ambiguous treatment notes that Littlefield is "doing relatively well from the standpoint of his anxiety" (Tr. 639) do not provide a basis for rejecting Dr. Mullins's opinions, particularly in light of the fact Dr. Janzen's treatment was not focused on Littlefield's mental impairments. Instead, they must be read in the context of the overall diagnostic picture. *Holohan v. Massanari*, 246 F3d 1195, 1205 (9th Cir 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her

ability to function in a workplace."); *Kellough v. Heckler*, 785 F2d 1147, 1153 (4th Cir 1986) (quoted with approval in *Holohan*).

Apart from the inconclusive chart notes of Dr. Janzen addressing mental impairments, the ALJ offers his own conclusion that Littlefield does not have an anxiety disorder or depression, but is simply exhibiting symptoms from his drug addiction which mimic the symptoms of those disorders. Tr. 23 ("[Littlefield] is not diagnosed with anxiety or depression impairments because his symptomology from opioid (heroin), cocaine and alcohol abuse mimic symptoms of anxiety and depression."). Similarly, the ALJ concludes that "constant" anxiety can be ruled out, based again on Littlefield's alleged "independent functioning," leading him to speculate that Littlefield is merely exhibiting drug-seeking behavior rather than anxiety or depression impairments. *Id*. An ALJ may not substitute his opinion for that of a physician. *Day v. Weinberger*, 522 F2d 1154, 1156 (9th Cir 1975); *see also Schmidt v. Sullivan*, 914 F2d 117, 118 (7th Cir 1990) (Posner, J.) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them."), *cert denied*, 502 US 901 (1991).

The ALJ also criticizes Dr. Mullins as being "unaware that [Littlefield] was not taking Celexa" by comparing a chart note by Dr. Mullins dated February 17, 2009, listing Celexa as one of Littlefield's medications, with a sentence in Dr. Kolbell's report that Littlefield "was treated with Celexa but does not take this and does not want antidepressants." Tr. 437. This entry in Dr. Kolbell's report, however, is of no moment because Dr. Kolbell's report is dated April 30, 2008, some 10 months *prior* to Dr. Mullins' chart note.

17 - OPINION AND ORDER

Finally, the ALJ criticizes Dr. Mullins for basing his opinions "solely on the claimant's subjective complaints of both mental and physical symptoms." Tr. 22-23. Dr. Mullins, to whom Littlefield was referred by Dr. Janzen for consultation and treatment of mental impairments, administered the BDI at intake in August 2008 (Tr. 511-12, 580-81, 621-22) and, during the course of Littlefield's treatment, completed Patient Health Questionnaires to assess Littlefield's mental status. Tr. 499, 501, 503, 505, 568, 570, 572, 574, 607, 609, 611, 613. He also observed Littlefield repeatedly over the course of treating him and had the additional insights of Littlefield's mother who transported him to appointments. Accordingly, this criticism by the ALJ is unwarranted and does not provide a basis for discrediting Dr. Mullins' opinions.

## III.    Remand for Benefits After Determination of Onset Date

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138 (9th Cir 2011). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id*.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited." *Id*.  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell v. Sullivan*, 947 F2d 341, 348 (9th Cir 1991).  The reviewing court declines to credit testimony when "an outstanding issue" remains.  *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

As discussed above, the ALJ erred by rejecting Dr. Mullins's opinion concerning Littlefield's capacity for completing a workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and maintaining an acceptable level of work attendance. Thus, that opinion should be credited as true.  *See Harman*, 211 F3d at 1179; *Smolen v. Chater*, 80 F3d 1273, 1281-83 (9th Cir 1996).

Turning to the other two facets of the *Harman* inquiry, this court finds that outstanding issues need not be resolved before a determination of disability can be made, and that the record is clear that the ALJ would be required to find Littlefield disabled if the evidence is credited.

At step five, based on the testimony of a VE, the ALJ determined that Littlefield could perform jobs that exist in significant numbers in the national economy.  However, the VE testified that, were the limitations endorsed by Dr. Mullins included, Littlefield would not be competitively employable.  Thus, when properly credited and combined with the VE's testimony, the testimony of Dr. Mullins establishes that Littlefield is not capable of competitive

employment.[3]  Accordingly, this case will be remanded for an award of benefits.  However, some mention must be made of the onset date.

Littlefield alleges an onset date of November 25, 2006, which is apparently when he last worked on a regular basis.  As noted in the record, Littlefield did not leave his job as a direct result of the symptoms of his medical and mental impairments and now-established disability, but due to conflict between his work responsibilities and treatment regimen.  Tr. 22, 395, 436. By the date of his examination by Dr. Kolbell on April 30, 2008, however, Littlefield's functional status had deteriorated to the point that Dr. Kolbell assessed his GAF at 45.  Tr. 438. The ALJ dedicated a paragraph of his decision to rejecting Dr. Kolbell's assessment of Littlefield's GAF, declaring it inconsistent with other GAF scores (Tr. 22), but four pages later assigned "great weight" to Dr. Kolbell's assessments (Tr. 26).  Whatever can be made of the GAF score, it is inescapable that as of April 30, 2008, Dr. Kolbell believed Littlefield was not "capable of sustained attention and persistence in a competitive workplace environment." Tr. 438.  The ALJ has provided no basis for discrediting this portion of Dr. Kolbell's report.

Social Security Regulation 83-20 (available at 1983 WL 31249) directs that:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile this discrepancy. However, the established onset date must be fixed on the facts and can never be inconsistent with the medical evidence of record.

The record contains scant evidence for the time period between Littlefield's last date of regular work (November 25, 2006) and the date when Dr. Kolbell opined that he was not capable

---

[3]  This finding obviates the need to discuss whether the ALJ erred in his treatment of the testimony of Littlefield's parents.  This court expresses no opinion on that issue.

of competitive employment (April 30, 2008).  On remand, the Commissioner is directed to credit

the opinions of Dr. Mullins, establish the onset date of Littlefield's disability, and award benefits

in a manner consistent with the record.

## **ORDER**

For the reasons stated above, the Commissioner's decision is REVERSED, and this case

is remanded for further proceedings, including a determination of the onset date of Littlefield's

disability and a corresponding award of benefits.

DATED this 17th day of January, 2014.

s/ Janice M. Stewart_____ __
Janice M. Stewart
United States Magistrate Judge

21 - OPINION AND ORDER